The next case is Christopher Grush v. DOJ, 2018, 1575. Mr. Kirkpatrick, good morning. Thank you, Your Honor. May it please the Court. Christopher Grush did not receive a sufficient notice regarding his indefinite suspension. He did not get a meaningful opportunity to respond to the notice. He was placed on indefinite suspension solely for the reason he was given was that his security clearance was suspended. You contend in the blue brief at 23 that the agency was utilizing a suspension of the security clearance in lieu of a revocation of the security clearance that it was strategically made to avoid due process. What proof of that is there in the record? More anecdotal in the sense that in my practice, and all I do is represent federal employees for misconduct, I also represent them on security clearance revocations. And I'm seeing this now happening. They place somebody on a suspension of their security clearance, and we say we don't know what's going to happen. We're going to investigate. I've had clients on indefinite suspension for two or three years. Then they haven't done anything. They haven't revoked the clearance. They haven't fired them. They haven't proposed to remove them. So I'm seeing this as a procedure by the agencies, mainly DEA and the Federal Air Marshals. So there's nothing in the record. I mean, we seal DOD stuff, too, but there's nothing in the record. There's nothing in the record. It's more of an anecdotal description of what I'm seeing and what happened here to Mr. Grush. I'm confused. Your client had in front of it and admitted an opportunity to respond after receiving it on page 76, the January 29, 2016 memo that was sent to him. It goes through in detail explaining his approaching the University of Michigan. It says expressly he has misused his office and there's potential for unauthorized outside employment. It goes through the details of approaching the university as seeking to obtain a paid consultanship. It goes through in a lot of detail. He had that memo in front of him, and unless the board is wrong on this point, and I didn't see you argue this, on page 812 it explains the appellant and his counsel reviewed these documents in the preparation of their oral and written replies. But what is laid out, Your Honor, is that... I understand the March 2nd letter is pretty bare bones, but you also had the January 29th memo at the time, maybe not you personally. He did not receive that appendix 76 until after the indefinite suspension was proposed. All he received was what's on appendix 78. But he received it at a time prior to his oral or written replies. Right. And his lawyer received it as well, and there was an opportunity to review that and address it prior. So I don't see how there's any kind of due process type problem here because he may not have received it before the indefinite suspension was proposed, but he received it at a time and had a full opportunity to argue it. And let me throw in there, to pile on, what additional information would have made the notice adequate, given everything Judge Moore just... Well, if it might be helpful, the Cheney case I think is on point, and the reason it's on point, if you look at the facts of that case, you see exactly the same type of information given to Mr. Cheney in that case, which is also a DEA case, and the court in that case said, look, that's not enough. That's not what we can say. You're not answering the question. What additional information would have made it adequate? Well, what the allegations was, it says five years ago. Was that five years and 10 months? Did it happen in 2009? Or did it happen in 2010 as the government contends in the brief? We don't know. How can he have an opportunity to understand the basic framework of what the allegation is so he can respond to it? We've had a lot of clearance cases, and I'm surprised at the amount of detail that's here, and that's still being challenged. He really knew what the problem was, the solicitation of business in Michigan. Well, Judge, and I know you were on the Gargiulio case, I think, if I'm pronouncing that correctly. I know you were on that panel, and there's some distinctions. What I'm seeing here is agencies using, say, we're going to suspend, but we're not going to revoke. We're not even going to say we're going to revoke, whereas in Gargiulio, that was a revocation case. In that case, he got a notice saying we're going to suspend as we revoke your clearance and gave him 30 days to respond in that notice, and he didn't get that. And he eventually got material, which was mandated by the executive order, 12968 by President Clinton, that governs revocations in security clearance revocations. What's that have to do with the facts here? Well, the facts are this, is that he was suspended, and there was no attempt by the agency to revoke his clearance. No, no, no. What's that have to do with the question we asked about what additional facts would have made it due process? Absolutely deny that. As you see from the facts of the case, the agency finally said, all right, we see what you did. They mitigated to a 10-day suspension when it eventually happened, and we had an oral reply with the deciding official. We had a written response, which I submitted as part of the briefs, and we denied that he was submitting anything, and they have never proven that. The question is, is that now he's back in the job, and I see a lot of these cases. Your problem, it seems to me, is that you think they got it wrong, what they stated in the January 29th memo, and you think that is proven by the lesser sanction he ultimately received. But the problem for you is this is 10 times more detailed than Cheney. What's on page 29 even talks about how the University of Michigan provided a copy of the business prospectus that Mr. Grush had provided to them, soliciting them. All of that may be wrong, and maybe all of this information they had gathered at this stage turns out to be erroneous, and he is either reinstated or there's a lesser sanction or whatever, but this isn't a question about the accuracy of what information was provided to him. This is whether he was given notice of what they thought he did wrong was, and I don't see how you can say page 76 isn't sufficient notice given that it's far more notice than the person Cheney got. Well, I respectfully disagree because I think if you look at Cheney, it's similar. He said he did specific things. As a matter of fact, Mr. Cheney was interviewed by OPR investigators before that, and he was sworn to secrecy in that case. You can't talk about what we talked about. He received information from the agency. Mr. Grush did not receive any business prospectus before he was indefinitely suspended. He received nothing except the documents that are contained in the record that I put there. The only thing I'm trying to bring to the court's attention is that if the agency is going to suspend somebody's clearance and not even tell them, like you see on page 78 of the appendix, there's no opportunity to respond. Hey, can you even respond to this? We're going to definitely suspend you just because your suspension has been, your clearance has been suspended. How can he adequately respond to that? And so there's an issue between revocations and suspensions, and I think the court hopefully would take a look at that and say, wait a second here. How can they take an action like this in a situation we're talking about a government shutdown in three weeks? My client had a government shutdown for 15 months. For his return, it has no pay for that period of time. There's a lot of issues here that the agency did not let him know what was going on until far later when we got the discipline case file in 2017, long after he was suspended, when OIG concluded their investigation. Just to be clear, I'm not suggesting that the fact that he was in fact suspended for 15 months without pay was by any means appropriate. But the question, that's not the question, but I mean, I'm not being asked to figure out how this process should work. Beyond just was he given adequate notice of the reasons for the suspension of his security clearance at a time where he could respond to it. So that's the only issue I'm looking into. I just want to say that because I appreciate that you are raising flaws in the system vis-a-vis the employee's rights and entitlements, but those aren't the flaws that are in front of me today. The only thing in front of me is do these documents provide him with sufficient notice of what they were thinking at the moment they were suspending him such that he could respond to it. So I just want to clarify that. Because the other things you're saying, I'm not going to suggest that I think, yep, that's great. The agency did everything just right. I just don't want you to know that. I appreciate that, Judge. Look, I'm not here claiming and screaming it's not fair and pounding my fist and please take action just because it's not fair. What I'm saying is that there's not even a small modicum of any kind of process that's in place other than that one paragraph. When did it happen? You're talking 15 months later. Mr. Cheney, that was like two months later. I'm sorry, not 15 months. We're talking five years at least in 2010, when this allegedly happened, which he disputed. And that's probably not even important that he disputed it. But obviously, ultimately, it wasn't true. But the point is that he didn't get an opportunity to tell the agency. Why was he suspended for 10 days? What's that? Why was he suspended? He was suspended for not reporting certain actions that he started a web-based business that after he retired he might solicit contracts and stuff. Not for seeking outside employment, I can tell you that. And it's in the record. You can see the assigned official's decision there. There is something. And I know that I'm coming before you with a lot of case law here. The government is touting Gargiulio, and I understand why. But it's different in the sense that that was a revocation. And you might say, that doesn't matter to us. But it should matter when the agency suspends only and then reinstates later on down the line. And what do we do? At least give us the information like you do in a revocation. The executive order's clear. They give you the whole file. I've had cases. And they give you tons of documents. They give you everything they have. And then we get a chance to respond. What they're doing here is just suspending. Not saying we're going to suspend and revoke. We're just going to suspend until we get a handle. Again, you're beyond the scope of any relief I can give you. Because what you're arguing, and again, I actually agree with you, is that if they had just canceled his clearance, he would have gotten so much more process. This would have taken place quickly. And the guy wouldn't have been out of work for 15 months. It's wrong that someone with a suspension should be out of work and unpaid longer than someone for whom a proposed cancellation exists. The problem is, again, not in front of me. I totally agree with you. That bothers me also. And I know this is an ambitious appeal. Because I think there's something that has to be looked at that this court might— I just want you to make sure you understand. I get your points. I hear your complaints about the system. But I can't fix the system. And I wouldn't have wasted the time of the court by coming in here with some sort of silly argument. And maybe you'll just feel bad for my client. That's not why I'm here, obviously, because that's not what you guys do. I mean, you consider the law. But I think there's something that needs to be looked at, because this court has a lot of case law regarding the whole revocation. I'd like to see the same case without the suspension and ask the government why they didn't back pay him. I'm going to ask that question. Good, because we tried to work something out, but it just didn't happen. And, look, I have a lot of cases at DEA. I have a lot of 1811s I represent nationally. That's what I do. And I had a lot of back and forth. And I see that running in my time. So I'll just reserve the last few minutes. Thank you. We will hold it for you. Ms. Kirshner? You heard my question, Ms. Kirshner. I'm sorry, Your Honor. Okay. Let me just give you a hypothetical. Supposing with the same facts, after the 15 months, the government had come back and said, we're wrong. Your clearance is reinstated. We just made an error. Would he get the 15 months back pay? No. If there is a legitimate, valid, indefinite suspension imposed by the government, then when they are restored to duty, they do not get back pay for the period of the indefinite suspension. Even though the government finds out that it erred. It had that information, and it was wrong. Correct. Correct. It still would not receive back pay for the period of the indefinite suspension. What's the basis for that? Excuse me? Why? What's the basis for that? Why not? Because the government, first of all, the clearance, the, has been suspended. I understand that. What's the statutory basis for not paying him back pay in my hypothetical? There's no entitlement. There's no statute that gives a right to the pay for the period of a valid, indefinite suspension. If the indefinite suspension was invalid, then back pay could be imposed by the Merit Systems Protection Board. But if it is a legitimate adverse action, a legitimate Would it be invalid if there was a facial reason, but it turned out it was erroneous? Not in the context of a suspension that is imposed because of lack of a security clearance. So let me give you an example. So in this case, suppose that the complaint from the Regents at the University of Michigan about someone soliciting business turns out not to have been Mr. Grush at all. It was Mr. Smith. So Mr. Grush has his security clearance suspended for 15 months. He's out of work without pay for 15 months, and it turns out he never did anything, and he's completely and utterly exonerated. There's no back pay? No back pay. As long as the security clearance has been suspended, and there is a proposal to give you an indefinite suspension from your job, and you get sufficient notice. And then there's a decision that you are indeed indefinitely suspended, and then the investigation goes on. And ultimately, it's concluded, no, this individual did not engage in the misconduct that was alleged. In that kind of a case, you do not get back pay because there is a legitimate indefinite suspension from your job because you do not have a condition of employment, which is a security clearance. And you are not able to perform any of your duties during that period when you are being investigated for misconduct. What is the difference between that and cancellation of a security clearance? A 15-month suspension, which turns out to have been completely unwarranted, versus cancellation? Okay, where there is a revocation. Okay, revocation. I wasn't using the right word. That's okay. I'm with you, Your Honor. It's just that the terminology is revocation. Then the executive order applies. Now, if you are proposed to revoke your security clearance, then you are suspended from your duties. You're not doing your duties because you don't have a security clearance, but the proposal is to revoke it permanently. So you're not doing your job. You're not getting paid. But you have the procedures under the executive order, which would give you certain documents and, in certain cases, a hearing. Now, the consequences where there is a revocation of a security clearance are much greater than the consequences where it's just being suspended while you're being investigated. Where there is a proposal to revoke it, if it is indeed revoked, you have no job. You have no prospect of ever returning to that job. Now, that's very different from the case here where Mr. Gruss was being investigated for misconduct. And as Your Honor pointed out, he knows what's being alleged. The board based its decision on two key documents in the record. Those are the proposal, which is at pages 70 to 72, and the January 29th memo, which is at page A76 of the appendix. Now, the proposal does identify the misconduct that's being alleged. And it explains that there has been information provided that he misused his office. And then in the January 29th memo, there's further information that exposes. Yeah, March 2nd alone wouldn't have done it for me, but the January 29th thing is just so detailed. I don't see any rumor on that. Excuse me? The March 2nd thing wouldn't have done it for me, but the January 29th memo is so detailed and specific, I don't see how that isn't providing sufficient notice. Yes, Your Honor, we agree that the combined information was sufficient. And I did want to clarify that he did have an opportunity to make a response to these allegations. For example, if Mr. Gruss wanted to say, that wasn't me, you've got the wrong man. Okay, he had that opportunity, and he didn't use it. The written response begins at page A-70 of the record, and it makes no response to the allegations of misconduct. Now, frankly, that's not surprising. He knows he's being investigated. He knows why he's being investigated. He knows as a DEA investigator, he's going to be interviewed. He's going to be interviewed by the OIG, because he's told that the Office of Inspector General is investigating him. So he knows what's coming. So the decision is made... It's not A-70. What page is it? I'm sorry. Oh, excuse me. I see. I gave the wrong... I'm sorry, Your Honor, I gave you the wrong site. That's my error. The written response is in the record. I'm sorry, Your Honor, I had the wrong page number. The written response, A-52. It's a lengthy document, but if you review it, you will find in no sentence in that document does it take on the allegations of misconduct. And as I said, that's understandable because he knows that the Office of Inspector General is going to be... is doing an investigation and can anticipate that he will be interviewed at some point during that investigation. And, in fact, he was subjected to several interviews by the Office of Inspector General in 2016 and 2017. Then I'd also like to clarify that the eventual findings with regard to the misconduct did include unauthorized employment. And the findings with respect to the misconduct are also included in the administrative record that was before the board. So there really only are two issues for the court. Did he have sufficient notice? Yes, he did. This case is very, very different from the Cheney case. He knows exactly what misconduct is being alleged. He even knows the source of the allegations. He's told that at a meeting, the general counsel for the University of Michigan informed the assistant United States attorney of the misconduct in question. And this is at a time when Mr. Grush himself is supervising an investigation of the University of Michigan. And also in the record is the information that after this comes out, that investigation of the University of Michigan is no longer under Mr. Grush's control. It's reassigned to other individuals. Now the other question is simply whether he's entitled to discovery of documents underlying the suspension of the security clearance. And this court has already addressed that issue and said that there is no right to discovery of the underlying documents. And I'd like to just point out that the board has a specific opinion on that. And that opinion is in the record beginning at page A93. Counsel, when you raise issues that he doesn't raise and that we didn't raise, you now open the door for him to address those issues on rebuttal. Had you not gone down this road, he would not have been permitted to raise this issue in his reply. I'm sorry, I'm missing... An oral argument right now about this discovery. He never raised this issue in his presentation to us today. Well, Your Honor, then if that's the case, I misunderstood. I'm trying to teach you something about oral argument. If he doesn't raise an issue and then you don't raise that issue, he doesn't get to stand up on rebuttal and raise the issue for the first time. Your Honor, I understood his argument differently. I'm sorry. I understood him to address the discovery of documents, so I heard it differently. I apologize. Then I apologize if I missed it. Thank you. Nothing further. Thank you. Commissioner, Mr. Cook, Patrick has about three minutes if you need it. I'll be real brief. The issue of discovery, I'll just mention that. It's documents, evidence that the executive order requires. It's not discovery so much where I ask for it, they have to give it. Just like in a misconduct investigation, the agency must give you the materials reliable. This is if it had been a proposed revocation as opposed to a suspension. Correct. There is no process. As you can see in the case, the deciding official and the official who suspended his clearance, they know nothing about what we're talking about. You're right, Judge. I wish I could convince you about the Cheney case, but the Cheney case specifically talks specifics. It's inappropriately querying or causing to be queried law enforcement databases and abusing administrative subpoena process and also violating the confidentiality agreement with OPR. That's very detailed, too. I look at it the same way. Mr. Grush was not at a meeting. There's nothing in the record that suggests he was at a meeting when this was allegedly disclosed to DEA. The only thing he has is that one paragraph, and that's what I'm here fighting about. That's what I'm here to say. Look, something's wrong. We don't even get any documents. We don't even get any information beyond that. He was never given a prospectus. He was given nothing. The only documents he was given that the deciding official also said during his deposition, I received nothing else either. I don't know. And Mr. Verrall, the security control guy, the same thing. The only thing I have is here. Now, I was here in a case in front of Judge Wallach maybe five years ago, another DEA agent, similar issue, not quite the same issue here, and it had to do with whether or not we had an opportunity to dispose the deciding official. These things are cropping up and coming. And the point is, I think the court may need to look for an opportunity to carve something out. Maybe you can't. I don't know. Maybe I'm being overly optimistic and hopeful that you can say, wait a second, something slipped into the cracks, because we have employees that are not getting paid significantly in a long time, period. I've had some recently for a month. That's not enough to come run up here to spend resources on that. Somebody had their clearance suspended. I worked with the people at DEA because I know a lot of them, and we got it resolved, and he's back to work. It happened a couple of times. But you get into the 15-month range, and clearly there's nothing there. But unless you have any further questions. Thank you, counsel. We'll take the case under advisement. Thank you. All rise.